# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JAMES E. DAY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | No. 09-6045 |

## MEMORANDUM RE: SOCIAL SECURITY APPEAL

Baylson, J.                                                                November  22 , 2010

Plaintiff, James E. Day, seeks judicial review of the decision by the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Social Security Disability Insurance Benefits under 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 1381-83(c) (2000).

## I.      **Background and Procedural History**

On May 22, 2006, Plaintiff applied for SSDI, alleging disability beginning June 2, 2005. R. 13. Plaintiff, who was born on April 29, 1958, and completed two years of college, was 47 years old on the alleged onset date. He has worked as an account manager, customer service worker, and telephone sales and service worker. R. 79. In his application, Plaintiff alleged that he suffers from alcoholism, hypertension, high cholesterol, memory problems, and a seizure disorder, making him unable to work. R. 43.

The Social Security Administration denied Plaintiff's application on September 13, 2006. R. 13. On September 29, 2006, Plaintiff filed a timely written request for a hearing before an

Administrative Law Judge ("ALJ"). R. 13. The hearing was held before ALJ Suanne S. Strauss on December 7, 2007. R. 13. In her written decision of December 15, 2007, ALJ Strauss denied Plaintiff's application for benefits, and held that Plaintiff was not disabled under Sections 216(I) · and 223(d) of the Social Security Act. R. 21. The ALJ found that Plaintiff suffered from cognitive disorder, alcohol abuse, and seizure disorder. R. 16. Moreover, the ALJ found that "[Plaintiff] was fired from at least one job for alcohol abuse. He states that he drank 1/5 of alcohol per day and an occasional beer. The [Plaintiff] had several gastrointestinal bleeds requiring hospitalization and has had seizures due to his many year of alcohol abuse." R. 16. The ALJ found that Plaintiff has been in and out of treatment facilities for alcohol abuse. R. 16. In addition, the ALJ stated that Plaintiff "complained of memory problems, alleging that he has difficulty retaining information, forgets things and can't stay focused." R. 16.

The ALJ found that, taken together, Plaintiff's mental impairments, including substance use disorder, met 20 C.F.R. § 404.1520(d). R. 16. The ALJ explained Plaintiff's ailments satisfied Paragraph A of Listings 12.02 (schizophrenic, paranoid and other psychotic disorders) and 12.09 (autistic disorder and other pervasive developmental disorders).[1] R. 16. In addition,

---

[1]20 C.F.R. § 404.1520(d) states:

A. Introduction. The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairments(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months. The listings for mental disorders are arranged in nine diagnostic categories: Organic mental disorders (12.02); schizophrenic, paranoid and other psychotic disorders (12.03); affective disorders (12.04); mental retardation (12.05); anxiety-related disorders (12.06); somatoform disorders (12.07); personality disorders (12.08); substance addiction disorders (12.09); and autistic disorder and other pervasive developmental disorders (12.10). Each listing, except 12.05 and 12.09, consists of a statement describing the

2

the ALJ determined that Plaintiff's mental impairments, including his substance use disorder, cause at least "two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation" thus satisfying Paragraph B.[2] R. 17.

However, for purposes of determining whether a person has a disability under the Act, 42 U.S.C. § 423(d)(2)(c) states that "[a]n individual shall not be considered to be disabled[3] for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is

---

disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations). There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and 12.06, discussed herein. We will assess the paragraph B criteria before we apply the paragraph C criteria. We will assess the paragraph C criteria only if we find that the paragraph B criteria are not satisfied. We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied.

[2] In order to satisfy 20 C.F.R. Pt. 404, Subpt. P, App. 1, the regulation states that "[t]he required level of severity for the [above listed] disorders is met when the requirements in both A and B are satisfied . . . ." Paragraph B lists criteria which Plaintiff must satisfy:

B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning, or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration . . . .

[3] For purposes of the Social Security Act, "disability" is defined as:

[an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A) (2010).

3

disabled." 42 U.S.C. § 423(d)(2); see Knox v. Barnhart, 60 F. App'x 374 (3d Cir. 2003), McGill v. Comm'r of Soc. Sec., 288 F. App'x 50 (3d Cir. 2008).

The ALJ found that if Plaintiff's substance uses are not considered, he cannot satisfy the requirements under 20 C.F.R. § 404.1520(d), and would only have mild limitations in performing daily activities and social functioning, mild to moderate limitations in concentration, and no episodes of decompensation. R. 17. The ALJ further explained that Plaintiff would have the residual functional capacity ("RFC") to "perform light work with simple, repetitive work tasks; with standard seizure precautions (no unprotected heights, dangerous machinery or dangerous chemicals); lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit, stand, walk without limits; and no sustained public contact" and concluded, based on the testimony of the vocational expert ("VE"), that Plaintiff could perform work that exists in significant numbers in the national economy. R. 18, 20. The ALJ concluded that because Plaintiff was "capable of making a successful adjustment to work that exists in significant numbers in the national economy" were he to remain clean and sober, Plaintiff was not disabled within the meaning of the Social Security Act. R. 21.

Plaintiff timely appealed to this Court on December 27, 2007. R. 9.

## II.    **Legal Standards**

### A.    **Jurisdiction**

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." Id.

4

## B. Standard of Review

The standard of review of an ALJ's decision is plenary for all legal issues. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). The Court must review the record to determine whether substantial evidence supports the ALJ's decision. Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The factual findings of the ALJ are accepted as conclusive, provided they are supported by substantial evidence. Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003). Accordingly, this Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001). In reviewing the record for substantial evidence, however, this Court must "not 'weigh the evidence or substitute [its own] conclusion for those of the fact finder.'" Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).

## C. Disability Claim Analysis

To be defined as disabled under the Social Security Act a claimant "must demonstrate some 'medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period.'" Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)); see also 42 U.S.C. § 423(d)(1). The Act requires claimants to establish that their "physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

5

economy." Id.

The Commissioner has promulgated a five-step sequential evaluation for determining whether a claimant is eligible for benefits, set forth in 20 C.F.R. § 404.1520. First, if the claimant is engaged in substantial gainful activity, the claim must be denied. 20 C.F.R. § 404.1520. Second, the claim must be denied unless the claimant is suffering from a severe impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Third, if the claimant's severe impairment(s) meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claim is approved. 20 C.F.R. § 404.1520(d).

Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the RFC to meet the physical and mental demands of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f). Finally, if the claimant does not retain the RFC to perform past relevant work and there is no other work in the national economy that the claimant can perform, considering his or her RFC, age, education, and past relevant work experience, then the claim will be approved. 20 C.F.R. § 404.1520(g).

**III.    Parties' Contentions**

**A.    Day's Objections**

Plaintiff first contends that the ALJ's findings regarding Plaintiff's mental abilities and limitations are not supported by substantial evidence as they rely solely on one report by Edward Murphy, Psy.D., and asserts that Dr. Murphy's report and other evidence show Plaintiff's condition to be much more severe than the ALJ found. Pl.'s Br. 2. Second, Plaintiff claims that the ALJ failed to provide a legally acceptable explanation for rejecting evidence favorable to the

6

Plaintiff. Pl.'s Br. 8. Plaintiff asserts that not only did the ALJ improperly regard the Plaintiff's

testimony as consistent with her findings, but also she failed to take into account the reports by

both Karen Sullivan, M.D. and Marged Lindner, Ph.D., whose opinions contradicted her

findings. According to Plaintiff, the testimony presented by these witnesses was favorable to the

Plaintiff, but was rejected without explanation. Third, Plaintiff contends that the ALJ failed to

adequately explain her assessment of Plaintiff's RFC, again arguing that the ALJ relied solely on

Dr. Murphy's report and failed to account for her rejection of other evidence. Pl.'s Br. 15.

Fourth, Plaintiff asserts that the ALJ neglected to inquire if the testimony of the vocational expert

("VE") was consistent with the Dictionary of Occupational Titles ("DOT"), and erred by not

obtaining an explanation for existing inconsistencies. Pl.'s Br. 17.

## B. The Commissioner's Response

Commissioner responds first that substantial evidence exists in the record to support the

ALJ's findings regarding Plaintiff's cognitive impairments. Def.'s Resp. 6. According to

Commissioner, though Plaintiff does have some difficulties in completing certain tasks, these

difficulties are not sufficient to prohibit him from completing all tasks, and "no physician or

psychologist indicated that Plaintiff's mild memory impairment rendered him incapable of

simple, repetitive work tasks." Def.'s Resp. 6. Moreover, Commissioner points to the fact that

Plaintiff himself admits that his symptoms do not significantly interfere with his day-to-day

functioning since he stopped working. Def.'s Resp. 7. Second, Commissioner asserts that the

ALJ properly assessed the evidence in the record, including Plaintiff's testimony and the medical

expert reports. Def.'s Resp. 16. Third, Commissioner believes that the ALJ properly assessed

Plaintiff's RFC when she discussed Plaintiff's medical records, history and ability to control his

7

seizures, and capacity to perform simple work requiring only repetitive tasks. Def.'s Resp. 18.

Finally, Commissioner contends that the VE's testimony was consistent with the ALJ's

determination that jobs exist in significant numbers that Plaintiff could perform, and a minor

inconsistency with the DOT is not fatal. Def.'s Resp. 18.

## IV.    **Discussion**

### A.    **Substantial Evidence Exists to Support the ALJ's Findings**

Plaintiff contends that the ALJ's findings regarding Plaintiff's cognitive impairments are

not supported by substantial evidence as they are based on an erroneous assessments of

Plaintiff's seizure history, give improper weight to Plaintiff's daily activities, and, thus, rely

solely on one medical report by Dr. Murphy. Pl.'s Br. 2, 4.

This Court must review the ALJ's findings of fact to determine if they are supported by

"substantial evidence." Mirabile v. Comm'r of Soc. Sec., 354 F. App'x 619, 620 (3d Cir. 2009),

McGill v. Comm'r of Soc. Sec., 288 F. App'x 50, 52 (3d Cir. 2008). The Third Circuit has

explained that "'substantial evidence' need not be a preponderance of the evidence, but it must

be 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" Mirabile, 354 F. App'x at 620-21 (citing Richardson v. Perales, 402 U.S. 389, 401

(1971)). See also Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (3d Cir. 2009) (explaining

substantial evidence is "more than a mere scintilla"). Moreover, "the substantial evidence

standard is deferential, and that deference carries over to inferences that can be drawn from

properly supported factual findings." Kirk v. Comm'r of Soc. Sec., 177 F. App'x 205, 206 (3d

Cir. 2006). Finally, "[i]n determining whether there is substantial evidence to support the [Social

Security Administration's] conclusions," id., this Court can and should look at the entire record.

8

See Diaz, 577 F.3d at 504; Rutherford, 399 F.3d at 552.

### 1.     The ALJ's Error Regarding Plaintiff's Seizure History Was Harmless

Plaintiff claims that the ALJ's findings at steps four and five relied on the incorrect statement that Plaintiff has not had any further seizures since he stopped drinking, when in actuality, Plaintiff had his last seizure on September 7, 2006, eight months after achieving sobriety. Pl.'s Br. 4. Moreover, Plaintiff claims that his seizures or lack thereof, "say nothing about the extent of the impairment of Plaintiff's mental capacities, such as attention, memory, and concentration." Pl.'s Br. 4.

Reports from Vidhu Gupta, M.D., (R. 263, 272, 274), and Dr. Murphy, (R. 266), indicate that Plaintiff's last seizure did occur on September 7, 2006, after Plaintiff got sober. However, the ALJ's erroneous finding and failure to consider this one seizure was harmless error. See Brunner ex rel. Ellis v. Astrue, No. 08-56J, 2009 WL 734712, at *8 (W.D. Pa. March 19, 2009). In finding that Plaintiff's impairments absent the substance use did not meet a listing, the ALJ relied on evidence of improvements in Plaintiff's memory, which Dr. Murphy attributed, in part, to "improved regulation of [Plaintiff's] seizure disorder and alcohol abstinence." R. 18 (emphasis added). The record as a whole supports the ALJ's conclusion that Plaintiff's seizure disorder has been improving through proper management. Plaintiff had a total of six seizures between 2004 and September 7, 2006, five prior to and only one after achieving sobriety. R. 266. Moreover, Dr. Gupta indicated in her report that, even after the September 7, 2006 seizure, Plaintiff's seizure disorder was "nicely controlled" and she saw fit to reduce Plaintiff's seizure medication dosage. R. 263. Despite the improvements mentioned by both doctors, the ALJ still concluded that Plaintiff's impairments without the substance use presented limitations on his

"ability to perform basic work activities," mentioning that Plaintiff continues to be treated for a seizure disorder. R. 17. While the ALJ again mentions her erroneous finding regarding post-sobriety seizures in her assessment of Plaintiff's RFC, the RFC assessment still accounts for Plaintiff's need for "standard seizure precautions." R. 37. Thus, while the ALJ refers at several stages in her opinion to her erroneous finding regarding Plaintiff's seizure history, (R. 17, 19), this fact was not determinative and her "additional findings would have been adequate to support the decision even if the erroneous finding had not been made." Brunner, 2009 WL 734712, at *8. Thus, this Court concludes the ALJ's error to have been harmless and without bearing on whether substantial evidence exists to support the ALJ's findings.

### 2.  The ALJ's Reliance on Plaintiff's Daily Activities Was Not Improper

Plaintiff asserts that the ALJ incorrectly relies on the "myriad" of Plaintiff's daily activities in support of her findings regarding Plaintiff's cognitive limitations and ability to work. Pl.'s Br. 5.

Plaintiff cites several cases for the proposition that Plaintiff's activities "are the sort of transient and sporadic activities that the courts have repeatedly held not to establish the ability to work." Pl.'s Br. 5. In Fargnoli v. Massanari, the plaintiff claimed he was disabled due to a back injury, but went on a trip to Europe. 247 F.3d 34, 40 n.5 (3d Cir. 2001). The Third Circuit found that the plaintiff's trip to Europe could not be used "to show an ability to engage in substantial gainful activity[,]" in light of contradictory medical evidence. Id. Similarly, in Smith v. Califano, the plaintiff asserted he was disabled due to a chronic ulcer condition. 637 F.2d 968 (3d Cir. 1981). The Third Circuit in that case found that the plaintiff's ability to shop for necessities did not preclude a finding of disability. Id. at 971.

However, while an ALJ may not use "sporadic and transitory activities . . . to show an ability to engage in substantial gainful activity", Fargnoli, 247 F.3d at 40, n.5, "[a]ctivities of daily living are relevant and may be considered in evaluating a claimant's symptoms. Miller v. Astrue, No. 09-170, 2010 WL 3463380, at *8 (W.D. Pa. August 02, 2010) (noting that the ALJ properly considered the plaintiff's "engage[ment] in significant activities of daily living, albeit with the assistance of family") (citing 20 C.F.R. § 404.1529(c)(3)(I)).

In this case, though the ALJ does not specifically explain the "myriad of daily activities" to which she referred, one can easily conclude this statement referred to the activities discussed in the preceding paragraph, which states:

> [Plaintiff] goes to church everyday with his father and then goes to breakfast with him. He attends AA meetings twice a day and has a group therapy meeting once a week. He drives, uses the computer, does all the chores, socializes with his family and socializes at AA functions, and reads, but doesn't retain much.

R. 19. Pursuant to 20 C.F.R. § 404.1529(c), the ALJ set forth seven factors used to assess Plaintiff's credibility with regards to the severity of his symptoms and RFC, only one of which was "[t]he claimant's daily activities." R. 18-19. So doing, the ALJ did not find Plaintiff's ability to engage in daily activities as dispositive of disability. Rather, "in determining plaintiff's residual functional capacity, the ALJ properly considered plaintiff's allegations in light of [his] activities of daily living," as well as his treatment history and medical opinion evidence, and adequately explained in her decision how those activities were consistent with limitations that do not preclude all work activity. Romanie v. Astrue, No. 08-837, 2009 WL 3045597, at *4 (W.D. Pa. Sept. 22, 2009). Thus, this Court finds the ALJ to have properly limited the extent of her consideration of Plaintiff's daily activities.

### 3.      Substantial Evidence Exists to Support the ALJ's Findings

Finally, Plaintiff contends that, because the ALJ incorrectly assessed Plaintiff's seizure history and gave improper weight to Plaintiff's daily activities, then her findings rely solely on Dr. Murphy's report, which Plaintiff argues does not meet the requirement of substantial evidence. Pl.'s Br. 5. Plaintiff alleges that, standing alone, Dr. Murphy's report is insufficient evidence to support the ALJ's findings that Plaintiff is not disabled because the report demonstrates Plaintiff to be more severely impaired than the ALJ found. Pl.'s Br. 5.

The ALJ initially found that Plaintiff has three severe impairments: cognitive disorder, alcohol abuse, and seizure disorder, which meet Listings 12.02 and 12.09 of Paragraph A of 20 C.F.R. § 404.1520(d). R. 16. The ALJ found Plaintiff to have "developed cognitive deficits due to his alcohol consumption and/or his seizures" and "has memory loss, is unable to retain new information, gets confused easily and forgets things." R. 17. The ALJ found that Plaintiff's "mental impairments, including the substance use disorder, cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation" satisfying Paragraph B of 20 C.F.R. § 404.1520(d). R. 16-17. However, the ALJ concluded that, if Plaintiff stopped his substance use, he would not have the requisite marked limitations needed to satisfy Paragraph B, and therefore, could not meet a listing. R. 17-18. The ALJ further concluded that Plaintiff's cognitive impairments impose certain limitations, precluding complex work, but not simple tasks. R. 19.

The record contains medical reports relevant to Plaintiff's cognitive difficulties post-sobriety[4] from the following sources: Dr. Murphy, (R. 266-71); Marged Lindner, Ph.D., (R. 220-

_____

[4]The record contains several assessments of Plaintiff conducted prior to achieving sobriety, (see e.g., R. 117-99), but neither party contends that the ALJ should have considered these in making a determination of disability.

24); Dr. Gupta; (R.263-65, 273-75); and treating physician Karen Sullivan, M.D., (R. 201-213, 245-62, 276), as well as a report by the state agency psychologist John Hower, Ph.D., (R. 225-37). The ALJ's decision discussed only Dr. Murphy's opinion in detail, but gave "substantial and controlling weight" to all the medical opinions. R. 18-19. The ALJ cited Dr. Murphy's report at several stages of her analysis to support her finding that Plaintiff is not disabled without substance abuse. In differentiating between Plaintiff's mental impairments with and without substance abuse, the ALJ stated:

> The contrast between claimant's mental impairments pre and post sobriety is amply illustrated by the very detailed neuropsychological evaluation performed in December 2006 by Edward Murray [sic], Psy.D. Dr. Murphy found only "scattered areas of cognitive deficits on measures of immediate and delayed auditory memory, complex verbal memory, working memory, complex attention and concentration, non-verbal abstract reasoning and sequencing." He also noted that claimant reported that his memory was mildly improving which Dr. Murphy specifically attributed to "improved regulation of his seizure disorder and alcohol abstinence during the prior 10 months" (Exhibit 16F).

R. 18. The ALJ further stated that "Dr. Murphy's extensive report, based on testing after claimant became sober, clearly demonstrates that he retains the capacity to perform simple, repetitive work." R. 19.

Plaintiff is correct in asserting that Dr. Murphy's report reflects Plaintiff's "multiple cognitive complaints including difficulties in short term memory." Pl.'s Br. 6. As part of his evaluation, Dr. Murphy explained:

> Mr. Day has multiple cognitive complaints pursuant to the onset of his seizures. He reports difficulties in short term memory. He has trouble holding onto details of conversations or information that he reads. He describes himself as more forgetful and has problems with misplacing items around his home. He will forget often why he has entered the room and has difficulty recalling the names of people. He denied any memory difficulties prior to 2004. He also reports mild word finding and word retrieval

13

> difficulties. . . . He has difficulty sustaining focused attention on tasks. He finds that he continues to experience lapses in attention. . . . He describes himself as more confused in situations that involve reasoning and problem-solving. His father now assists him in managing his basic finances.

R. 266-67.

However, the record supports the ALJ's findings that with the control of Plaintiff's seizures and his sobriety, Plaintiff's cognitive impairments have improved and do not preclude him from engaging in simple tasks. R. 19. In Dr. Murphy's diagnostic impressions, which the ALJ relied upon in her findings, he found only "scattered areas of cognitive deficits." R. 271. Dr. Murphy explained "[Plaintiff] reports that he does not feel his memory difficulties are worsening over time, but rather, mildly improving," which Dr. Murphy posited was a result of "improved regulation of his seizure disorder, as well as . . . the benefits of his alcohol abstinence during the past ten months." R. 271. Dr. Murphy found Plaintiff "does not find these symptoms significantly interfere in his day-to-day functioning since he has stopped working." R. 271. Moreover, even though Plaintiff indicates that he has had several episodes a day of lapses in attention, and several mild episodes daily of muscle tension, there has been "a reduction in these episodes since initiation of Trileptal." R. 271. Dr. Murphy also concluded Plaintiff's general intellectual functioning to be in the lower range of average with comparable verbal and visual motor problem solving skills; average working memory abilities and processing speed abilities; and "adequate retrieval for past information and facts," if "mildly impaired on measures of initial acquisition of new information, short delay recall, and long delay recall." R. 268, 270.

The "Clinical Psychological Disability Evaluation" performed by Dr. Lindner on August 19, 2006, and the neurology evaluations by Dr. Gupta also addressed Plaintiff's cognitive

14

impairments in a manner consistent with the ALJ's findings. Dr. Lindner's report stated that Plaintiff's primary complaints center around his memory, both his inability to recall a "substantial period" between June 2004 and October 2005 and his difficulties with "day to day memory." R. 221. Dr. Linden noted that when Plaintiff reads, he does not retain information, and must frequently read things repeatedly in order to fully comprehend them and commit them to memory. R. 222. However, Dr. Lindner found Plaintiff to be an organized person, who does not forget his appointments, where he keeps his keys or "other simple things like that as he has for a long time had routines for those things." R. 221. Dr. Lindner tested Plaintiff with serial sevens, with which he had no difficulty and tests of short-term memory revealed nothing that was "out of the ordinary." R. 223. Dr. Lindner explained that it is "possible that [further testing] . . . would reveal subtle signs of memory impairment." R. 223. Further, while Plaintiff "functioned well in the areas of concentration, persistence, and pace[,]" he reported to Dr. Lindner "difficulty with absorbing new information of some complexity." R. 224. However, Dr. Lindner concluded that "[Plaintiff] is likely, with continued treatment and abstinence, to be able to resume work" and "should slowly begin to expand the range of his responsibilities." R. 223-24. Similarly, Dr. Gupta described Plaintiff's memory problems as "mild" and assessed his recall on September 18, 2007 to be "3/3 after five minutes." R. 263-65.

Little doubt exists as to whether Plaintiff suffers from memory impairments. However, his impairments must satisfy both Paragraph A and Paragraph B of the statute, 20 C.F.R. § 404.1520(d). Plaintiff himself indicated that his "short term memory seem[s] to be getting better . . . ." R. 99. Plaintiff's testimony further demonstrates that he is able to function on a daily basis, and is able to complete a variety of tasks with only mild to moderate impairments. R. 19.

15

This Court concludes that the record provides substantial evidence to support ALJ's finding that when Plaintiff is sober, he has only "mild limitations in performing activities of daily living; mild limitations in social functioning; mild to moderate limitations in concentration; and no episodes of decompensation." R. 17. This Court further concludes that substantial evidence exists to support the ALJ's findings that, while Plaintiff's cognitive impairments present some limitations they do not preclude all work activity.

### B. The ALJ Provided a Legally Acceptable Explanation for Rejecting Evidence

Plaintiff alleges in his brief that the ALJ failed to provide a legally acceptable explanation for rejecting either Plaintiff's testimony or the expert opinions of Drs. Sullivan and Lindner. Pl.'s Br. 8.

### 1. The ALJ Properly Credited Plaintiff's Testimony

The ALJ is "empowered to evaluate the credibility of witnesses," including statements and complaints by claimants. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983) (citing Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981)). This credibility determination must be considered conclusive if supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)). When making credibility finding, the ALJ must indicate which evidence she rejects and which she relies upon as the basis for her findings. See Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999). Finally, an ALJ must seriously consider a claimant's subjective symptoms, and cannot discount such symptoms if objective evidence demonstrates a condition that could reasonably produce such symptoms, even without objective evidence of the actual symptoms. See, e.g., Chrupcala v. Heckler, 829 F.2d 1269, 1275-76 (3d Cir. 1987).

16

Plaintiff asserts that instead of making adverse findings against Plaintiff's credibility, the ALJ incorrectly regarded Plaintiff's testimony as consistent with her own findings. Pl.'s Br. 10. In her opinion, the ALJ acknowledged the difficulties Plaintiff discussed in his testimony, including his sleepiness and development of seizures. The ALJ also acknowledged that Plaintiff "has residual memory and cognitive problems with short term memory deficits, difficulty holding onto new details, is more forgetful, and has difficulty recalling names, and misplaces items around his home." R. 19. The ALJ also took into consideration other aspects of Plaintiff's testimony, explaining that:

> The claimant testified that he receives $1,667 a month long term disability and will continue to do so until age 65 and hasn't made any effort to find any work since he knows that he cannot return to his past work . . . . He stated that he goes to Church everyday with his father and then goes to breakfast with him. He attends AA meetings twice a day and has a group therapy meeting once a week. He drives, uses the computer, does all the chores, socializes with his family and socializes at AA functions, and reads, but doesn't retain much.

R. 19. The closest the ALJ came to discrediting Plaintiff's testimony was her statement that Plaintiff has adequate funds from his long term disability insurance and therefore has no incentive to return to work. R. 20. However, the ALJ never explicitly discredits Plaintiff concerning this testimony, but rather accepts it and credits it to be consistent with her findings.

Considering the discussion of Plaintiff's testimony in the ALJ's opinion, this Court finds that the ALJ met her obligation to describe her evaluation of Plaintiff's testimony with sufficient particularity. Moreover, this Court also finds that Plaintiff's testimony is consistent with the findings of the ALJ. The ALJ explained that "since the claimant stopped drinking . . . he is able to perform a myriad of daily activities . . . . [While he is] limited due to his cognitive difficulties . . . these limitations do not preclude all work activity. . . [and he can perform] simple tasks." R.

17

19. None of these findings are contradicted by Plaintiff's testimony, which clearly outlines both the extent of his limitations and his ability to engage in daily activities. This Court finds that no further explanation regarding the credibility or rejection of Plaintiff's testimony was required.

## 2. The ALJ Properly Accepted Expert Opinions as Consistent with Findings

When setting forth her findings of fact, the ALJ has an obligation to thoroughly explain her reasoning. See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). So doing, the ALJ must provide "not only an expression of the evidence [she] considered which supports the result, but also some indication of the evidence which was rejected." Id. Because the ALJ cannot reject evidence for no reason or for the wrong reason, the ALJ must set forth "the reason why probative evidence has been rejected . . . so that a reviewing court can determine whether the reasons for rejection were improper." Id. at 707 (citing King v. Califano, 615 F.2d 1018 (4th Cir. 1980)). With respect to opinion evidence, though the ALJ has an obligation to discuss contradictory expert opinions and an explanation for their rejection, this rationale does not apply to expert opinions that are duplicative of or consistent with other expert opinions, so long as the ALJ's findings are supported by substantial evidence. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121-22 (3d Cir. 2000).

Dr. Lindner's assessment of Plaintiff's cognitive difficulties, which is not discussed by the ALJ, is consistent with and duplicative of Dr. Murphy's report and does not contradict the findings of the ALJ. Consistent with the findings of the ALJ, both doctors assessed Plaintiff has having low average to average intellectual functioning, a seizure disorder, and short-term memory impairments. R. 220-21, 222-23, 268. More specifically, Dr. Lindner explained that

Plaintiff is "having trouble with his day to day memory," stating that "when [Plaintiff] reads, he does not retain much information, and frequently must read things repeatedly in order to fully comprehend them and commit them to memory." R. 222. Similarly, Dr. Murphy explained that "[Plaintiff] has multiple cognitive complaints pursuant to the onset of his seizures" and that Plaintiff "reports difficulties in short term memory." R. 266. However, both doctors also concluded that Plaintiff's memory impairments were mild, while Dr. Murphy further concluded that Plaintiff's deficits were improving over time, which he attributed to Plaintiff's sobriety and control of his seizure disorder. R. 223, 271.

Dr. Lindner's report goes on to provide a prognosis for Plaintiff, which stated that Plaintiff "is likely with continued treatment and abstinence, to be able to resume work. He may not be able to work at the level of employment that he handled at an earlier time in his life. . . . [A]ssuming too many responsibilities too quickly would likely precipitate a relapse, but there will come a time when he should begin to assume more responsibilities and may eventually return to work." R. 220-23. While Dr. Murphy did not provide an analogous assessment, Dr. Lindner's opinions mirror Dr. Murphy's conclusions regarding Plaintiff's improvement post-sobriety. More importantly, Dr. Lindner's prognosis is in line with the ALJ's findings as to the severity of Plaintiff's impairments without his substance use and his ability to "perform simple, repetitive work," which this Court has concluded were supported by substantial evidence in the record. R. 19. As a result, it was unnecessary for the ALJ to address Dr. Lindner's expert opinion in any greater detail than she did.

Regarding Dr. Sullivan's opinion, Plaintiff claims that Dr. Sullivan's statements "neuropsych testing confirmed disability" and "agree [with] disability" are inconsistent with the

19

ALJ's findings. Pl.'s Br. 12 (citing R. 259). The phrases, which appear unqualified, were written by Dr. Sullivan as part of what appears to have been a general examination, rather than a specific inquiry into Plaintiff's cognitive difficulties. It appears, as well, that these statements referred to Dr. Murphy's neuropsychological evaluation since the only document referencing a "neuropsych testing" is that document. R. 266. This being the case, Dr. Sullivan's conclusory statements could only, at best, be a reflection on or passing reference to Dr. Murphy's evaluation, and more importantly, would be a second-hand analysis of that evaluation, which the ALJ found to be consistent with her own findings. Moreover, though Dr. Sullivan uses the term "disability" in her notes, "a determination of disability by medical sources . . . is not controlling as to whether the individual is disabled under the Social Security Act." DiGiacomo v. Comm'r of Soc. Sec., No. 09-2677, 2010 WL 1650031, at *4 (E.D. Pa. April 19, 2010) (citing 20 C.F.R. § 416.927(e)(1); 20 C.F.R. § 416.904). Considering these facts, and the lack of supporting context, these statements have no bearing on the ALJ's findings and the ALJ had no obligation to discuss them in detail.

## C. The ALJ Did Not Fail to Adequately Explain Her Assessment of Plaintiff's RFC

In his objection to the ALJ's assessment of Plaintiff's RFC, Plaintiff raises the same arguments discussed above, namely (1) that Dr. Murphy's report does not provide substantial evidence for the ALJ's conclusion that Plaintiff can "perform simple, repetitive work" and (2) that the ALJ did not provide an adequate explanation for rejecting evidence. Pl.'s Br. 16.

The ALJ must consider all relevant evidence when determining an individual's RFC in step four of the sequential analysis. Weinsteiger v. Astrue, No. 09-1769, 2010 WL 331903, at *8

20

(E.D. Pa. Jan. 25, 2010) (20 C.F.R. § 404.1545(a)). At step five of the sequential analysis, the

ALJ found that, if Plaintiff ceased substance use, he "would have the [RFC] to perform light

work with simple, repetitive work tasks,[;] with standard seizure precautions . . . ; lift and carry

up to 20 pounds occasionally and 10 pounds frequently; sit, stand, walk without limits; and no

sustained public contact." R. 18. This Court has already determined that the evidence in the

record provided substantial evidence to support the ALJ's findings regarding the severity of

Plaintiff's impairments and the extent of his limitations and that the ALJ did not err in not

addressing in depth evidence which was duplicative of other evidence consistent with her

findings. Thus, this Court concludes Plaintiff's argument regarding the ALJ's RFC assessment

has no merit.

### D.      The ALJ Did Not Err by Relying on Vocation Expert Testimony

Plaintiff contends that, at step five, the ALJ did not perform her obligation, under SSR

00-4p, 2000 WL 1898704, at * 2-3 (2000), to ask the VE to resolve any inconsistencies between

his testimony and the Dictionary of Occupational Titles ("DOT") and that a comparison between

the VE's testimony and the DOT reveals inconsistencies. Pl.'s Br. 18.

When questioned by the ALJ, the VE concluded that an individual of the claimant's age,

education, and past relevant work, who can perform "light work with simple, repetitive work

tasks,[;] with standard seizure precautions . . . ; lift and carry up to 20 pounds occasionally and

10 pounds frequently; sit, stand, walk without limits; and no sustained public contact" could not

perform Plaintiff's past relevant work. R. 37. However, when asked if this hypothetical

individual "could . . . do any work[,]" the VE replied, "yes . . . [T]hey could do work . . . limited

to the light exertional level and . . . at the unskilled level because of the simple, repetitive tasks

21

they . . . would have to perform." R. 38. The VE stated that the hypothetical individual with the limitations identified by the ALJ would be "able to function, for instance[,]" as a "conveyor line bakery worker," a "toll collector," a "marker," or perform "assembly work," a "sample" position being an "electrical accessories assembler." R. 39.

As to the level of simplicity required by the suggested occupations, Plaintiff's attorney asked whether the hypothetical person could perform any of these jobs if that person "had a substantial loss of ability to remember simple instructions." R. 39. The VE responded that "these are unskilled occupations . . . of simple, one or two steps. You do have to learn those steps, but usually you can learn them without having any plural or verbal instructions. . . [Y]ou're doing the same thing everyday . . . one or two steps throughout the day . . . and memory shouldn't be a problem after the first couple of . . . hours doing something like that." R. 40.

Plaintiff takes issue with a perceived discontinuity between the VE's interpretation of the hypothetical, which limited the individual to "simple, repetitive work," and the occupations suggested by the VE. Pl.'s Br. 19-20. Plaintiff contends that, while the hypothetical presented by the ALJ "did not explicitly limit the individual to work involving one- or two-step tasks[,]" the VE interpreted the limitation of "simple, repetitive work" to mean work of one or two steps. Pl.'s Br. 18. Plaintiff asserts that, since the DOT identifies three of the four occupations suggested by the VE as requiring reasoning levels of 2 or 3, a contradiction exists between the VE's testimony and the DOT about which the ALJ was required to question the VE on the record.

The DOT lists "maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." Thompson v. Astrue, No. 07-2989, 2009 WL 7007996, at *11 (E.D. Pa. Jan. 30, 2009) (citing SSR 00-4p, at

*2-3). The Administration has recognized that "a VE . . . may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, at *3. Pursuant to SSR 00-4p, an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT]." SSR 00-4p, at *1. The Third Circuit has interpreted SSR 00-4p to require that the ALJ question the VE on the record about the existence of any conflict, "elicit a reasonable explanation" where such a conflict appears, and explain in the decision "how the conflict was resolved." Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir. 2002).

The ALJ's failure to ask the VE about this alleged conflict does not require remand. "[T]he Third Circuit [has] refused to mandate reversal where an ALJ has failed to 'discover and explain a conflict.'" Diehl v. Barnhart, 357 F. Supp. 2d 804 (E.D. Pa. 2005) (finding inquiry into a possible conflict unnecessary in light of both detailed questioning of the VE by ALJ and attorney and the VE's expressed knowledge of DOT). Even recognized inconsistencies "need not be fatal if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005). Here, the occupations listed by the VE were simply examples not intended to provide an exhaustive list of work available to Plaintiff, given his limitations, a distinction found to have been significant in Rutherford. See Rutherford, 399 F.3d at 557. Further, the occupations identified are "consistent with the limitations" posed by the ALJ limiting Plaintiff to "simple, repetitive work." Young v. Astrue, No. 09-2834, 2010 WL 2135627, at *7 (E.D. Pa. May 26, 2010) (citing Rutherford, 399 F.3d at 558).

At least one of the occupations identified by the VE, that of a conveyor line bakery

worker, only requires a reasoning level of 1, which demands a worker "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." See DOT No. 524.687-022 Bakery Worker, Conveyor Line. This suggested occupation is entirely consistent with the VE's description of work requiring only one or two steps.

The DOT identifies two other suggested occupations, production assembler and marker, as requiring a reasoning levels of 2. See DOT No. 209.587-034, Marker; DOT No. 706.687-010, Assembler, Production. Such occupations "only require[] a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations." Money v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004). This, in itself, does not create an inconsistency with the VE's testimony. A reasoning requirement of 2 need "not contradict the mandate that [a plaintiff's] work be simple, routine and repetitive." Id. (finding that "three of the six jobs that the VE listed still [met] the ALJ's stated RFC for [plaintiff] under the DOT definitions."); see also Thompson, 2009 WL 7007996, at *11 (adopting the reasoning of courts in other jurisdictions that have concluded that "inclusion of the words 'one- to two-step tasks' in [an ALJ's assessed] RFC limitations did not limit Plaintiff to jobs with a reasoning level of 1."). Given the VE's detailed testimony regarding the effects of Plaintiff's memory on his ability to perform the suggested occupations, any remaining inconsistency between his statements and the DOT reasoning requirement for a toll collector is "simply not egregious enough - either in number or in substance - to bring into question the ALJ's reliance on the expert testimony as a whole."
Young, 2010 WL 2135627, at *7 (citing Rutherford, 399 F.3d at 558).

24

## V.    <u>Conclusion</u>

For the foregoing reasons, the Commissioner's decision is affirmed.  An appropriate order follows.

O:\CIVIL 09-10\09-6045 Dav v. Astrue\Day v. Astrue 09-6045 Memorandum Re SS Appeal.wpd